UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 22-593 JGB (SHKx)** | Date | September 16, 2022 |
| Title | *Kenneth Holley-Gallegly v. TA Operating LLC* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) DENYING Defendant's Motion to Compel Arbitration (Dkt. No. 17); AND (2) VACATING the September 19, 2022 Hearing (IN CHAMBERS)**

      Before the Court is Defendant TA Operating LLC's motion to compel arbitration ("Motion," Dkt. No. 17). The Court determines the Motion is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers submitted in support of and opposition to the Motion, the Court DENIES Defendant's Motion and VACATES the September 19, 2022 hearing.

## I.  BACKGROUND

      On January 19, 2022, Plaintiff Kenneth Holley-Gallegly ("Plaintiff" or "Mr. Holley-Gallegly") filed a class action in the Superior Court of California, County of San Bernardino against Defendant TA Operating LLC. ("Defendant" or "TA Operating"). ("Complaint," Dkt. No. 1-2, Ex. A.) The class action asserts eleven causes of action: (1) failure to pay all overtime wages at the legal overtime pay rate; (2) failure to pay premium wages at the legal pay rate; (3) failure to provide legally-compliant rest periods; (4) derivative failure to timely furnish accurate itemized wage statements; (5) derivative violations of Cal. Labor Code §§ 201-202; (6) independent failure to timely furnish accurate itemized wage statements; (7) independent violations of Cal. Labor Code §§ 201-202; (8) violations of Cal. Labor Code § 212; (9) failure to fully reimburse work expenses; (10) penalties pursuant to Cal. Labor Code § 2699; and (11) unfair business practices. (Id.)

On April 7, 2022, TA Operating removed to this Court alleging jurisdiction under the Class Action Fairness Act ("CAFA"). ("Notice of Removal," Dkt. No. 1 ¶ 7.) On August 15, 2022, TA Operating filed the Motion. In support of the Motion, TA Operating filed the following documents:

- Declaration of Eric J. Gitig, ("Gitig Decl.," Dkt. No. 17-2);[1] and
- Declaration of Claudia Ratica, ("Ratica Decl.," Dkt. No. 17-3).

Mr. Holley-Gallegly opposed on August 22, 2022. ("Opp.," Dkt. No. 18.) He also filed a request for judicial notice in support of his opposition.[2] ("RJN," Dkt. No. 19.) TA Operating replied on August 29, 2022. ("Reply," Dkt. No. 20.)

## II.  LEGAL STANDARDS

The Federal Arbitration Act (the "FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate.") Its principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 334 (citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468 (1989) (internal quotation marks omitted)). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." Id. at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. If such a showing is made, the district court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. Id. § 3. To determine whether to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Cox, 533 F.3d at 1119 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). A party seeking to compel arbitration

---

[1] The Declaration of Claudia Ratica is a scanned document in violation of L.R. 5-4.3.1, which requires that all electronically filed documents be created by publishing the document to PDF and not by scanning paper documents. The Court will strike future filings that violate this rule.

[2] The Court need not take judicial notice of Plaintiff's documents because they are unnecessary to the resolution of this matter. The request is DENIED.

under the FAA bears the burden of making this showing. Id. A party seeking to compel arbitration under the FAA has the burden in this regard. Id. However, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

### III. DISCUSSION

TA Operating argues that Mr. Holley-Gallegly signed an arbitration agreement during the course of his employment and moves to arbitrate his claims. (See Motion.) Mr. Holley-Gallegly opposes arbitration on the grounds that (1) the FAA does not apply because he is a transportation worker and (2) even if the FAA applies, the Agreement is unenforceable because it is unconscionable. (See Opp.)

**A. The FAA Governs the Agreement**

Mr. Holley-Gallegly first argues that the Agreement is unenforceable because Plaintiff and other employees in the proposed class fall under the transportation worker exemption of the FAA. (See Opp.) This exemption states, in relevant part, that "contracts of employment of seamen, railroad employees, or any class of workers engaged in foreign or interstate commerce" are exempt from FAA coverage. 9 U.S.C. § 1. Plaintiff is a truck mechanic. (Opp. at 5.)

Mr. Holley-Gallegly maintains that he is a transportation worker because TA Operating is part of the transportation industry and Plaintiff's job duties were closely related to interstate commerce. (Motion at 3-5) (relying on Fuentes v. Rush Truck Centers of California, Inc., 2019 WL 3240100, *4 ( C.D. Cal. Mar. 11, 2019); Western Dairy Transport., LLC v. Vasquez, 457 S.W.3d 458, 465 (Tex. App. 2014)). Mr. Holley-Gallegly primarily argues that Defendant's business is the determinative factor in whether the FAA applies. He argues that, because TA Operating is in the transportation industry and its motor carrier operation transports and delivers goods, the FAA does not apply to the Agreement, since Plaintiff serviced semi-trucks that hauled goods almost exclusively across state lines. (Motion at 4-5.)

Southwest Airlines Co. v. Saxon directs otherwise. 142 S. Ct. 1783, 1788 (2022). The Southwest employee in Saxon similarly argued that because her employer was an air carrier, which as "an industry is engaged in interstate commerce," "airline employees" thus constituted a "class of workers" covered by section 1. (Id.) However, the Supreme Court rejected that broad reading and found that the employee was "a member of a 'class of workers' **based on what she does at Southwest, not what Southwest does generally**."[3] (Id.) To be covered under

---

[3] In its rejection of the argument that section 1 exempts "virtually all employees of major transportation providers," the Court considered that such a large exemption would apply to "shift schedulers" and Southwest website designers, who would likely only be "perceptibly connected to the…instrumentalities" of interstate commerce, which is "not enough." (Id. at 1791, 1793) (internal quotations and citations omitted).

section 1, "any such worker must at least play a direct and necessary role in the free flow of goods across borders . . . [p]ut another way, transportation workers must be **actively engaged in transportation of those goods across borders** . . ." (Id. at 1790) (internal quotations and citations omitted).  Having reached that conclusion, the Court found airplane cargo loaders fall within section 1 because they perform activities within the flow of interstate commerce "when they handle goods traveling in interstate and foreign commerce." (Id. at 1793.)

Under Saxon, Mr. Holley-Gallegly is not exempt from the FAA. Although his employer is directly engaged in interstate commerce, Mr. Holley-Gallegly is not; he is a truck mechanic and is thus not exempt under section 1. Even though he is arguably "perceptibly connected to the . . . instrumentalities" of interstate commerce, this is "not enough." (Saxon, at 1791) (internal quotations and citations omitted). Thus, the FAA applies to the Agreement.

**B. Arbitration Agreement**

The Court determines whether the parties agreed to arbitrate a dispute unless the parties' agreement delegates this question to the arbitrator. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). In other words, when an agreement "clearly and unmistakably" delegates issues of arbitrability to the arbitrator, AT&T, 475 U.S. at 649, "the Court need not reach the threshold questions of arbitrability, namely, whether the arbitration agreement is valid and whether the claims at issue are within its scope," Dvorsky v. Axis Glob. Sys., LLC, 2017 WL 7079459, *3 (C.D. Cal. June 15, 2017). However, a party resisting arbitration may challenge the delegation clause, itself, as unconscionable. Brennan v. Opus Bank, 769 F.3d 1125, 1132 (9th Cir. 2015).

The Agreement contains a delegation clause. ("Agreement," Dkt. No. 17-3, Ex. A, III.C) ("[A]ll challenges to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement.") Contrary to Plaintiff's argument, the Ninth Circuit has suggested that it is not "require[d] that the contracting parties be sophisticated . . . before a court may include that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent."[4] Brennan, 795 F.3d at 1130. The Court finds that the parties delegated issues of arbitrability to the arbitrator and the delegation was clear and unmistakable. Even so, Plaintiff argues that the delegation clause is unenforceable because it is unconscionable.

In California, unconscionability has both procedural and substantive elements. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000). Procedural unconscionability addresses contract presentation and negotiation, and the inquiry is based on unequal bargaining power. Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev., 55 Cal.4th 223, 246 (2012); Armendariz, 24 Cal.4th at 114. Substantive unconscionability evaluates the

---

[4] Plaintiff cites a contrary Ninth Circuit opinion from 2021 that has been withdrawn. See Chamber of Commerce of United States v. Bonta, 2022 WL 3582697 (Mem) (9th Cir. 2022).

terms of the agreement and whether those terms are so "one-sided as to **shock the conscience**." See Soltani v. Western & Southern Life Ins. Co., 258 F.3d 1038, 1043 (9th Cir. 2001) (quoting Kinney v. United Healthcare Servs., 70 Cal.App.4th 1322, 1330 (1999) (emphasis in original); see also Armendariz, 24 Cal.4th at 114.  "Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on 'a sliding scale.'" Pinnacle, 55 Cal.4th at 247 (quoting Armendariz, 24 Cal.4th at 114).  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  Armendariz, 24 Cal.4th at 114.

   1. **Delegation Clause**

Plaintiffs argue that the delegation clause is procedurally unconscionable because (1) it is a contract of adhesion and Defendant, the employer, holds all the bargaining power; (2) Plaintiff is unsophisticated and the provision was not pointed out to him; and (3) the delegation clause was hidden within the arbitration clause.  (See Opp.)

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'"  Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting Pinnacle, 55 Cal.4th at 246).  Poublon explains that such oppression can be established "by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." Id. (internal quotations and citations omitted).

 A contract of adhesion is one "imposed and drafted by the party of superior bargaining strength" that "relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  Poublon, 846 F.3d at 1260-61 (quoting Armendariz, 24 Cal.4th at 113).  These circumstances can establish "some degree of procedural unconscionability" but a contract of adhesion is not "per se unconscionable."  Id.  The party who drafts an agreement is "under no obligation to highlight the arbitration clause of its contract, nor [i]s required to specifically call that clause to [a counter-party]'s attention. Any state law imposing such an obligation would be preempted by the FAA." Sanchez, 61 Cal.4th at 914.

The Agreement explicitly provides that it was required as "a condition of [Plaintiff's] continued employment."  (See Agreement III.D) (see also id. at 1.)  Mr. Holley-Gallegly declares that he was "not given an opportunity to negotiate any terms related to [his] employment." ("Holley-Gallegly Decl.," Dkt. No. 21, ¶ 4.)  Defendant does not dispute this contention in its Reply.  Thus, in view of the evidence as a whole, Plaintiff was presented with a contract of adhesion—a take it or leave it offer.  The terms of the Contract were not negotiable. This is sufficient to establish procedural unconscionability.

Substantive unconscionability "examines the fairness of a contract's terms." OTO, L.L.C. v. Kho, 8 Cal.5th 111, 129 (2019).  The analysis "ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh . . .

" Id. at 130 (internal quotations and citations omitted). "All the formulations point to the central idea that the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." Id. (internal quotations, citations, and brackets omitted). Unconscionable terms . . . "attempt to impermissibly alter fundamental legal duties." Id.

The delegation clause is not an independent paragraph within the Agreement; it is the second sentence of a paragraph titled "Applicable Law and Construction/Waiver of Jury Trial." (See Agreement, III.C.) That paragraph ends with the following sentence:

> IF THIS AGREEMENT IS DETERMINED TO BE UNENFORCEABLE, ANY CLAIMS BETWEEN YOU AND THE COMPANY RELATED TO YOUR EMPLOYMENT SHALL BE SUBJECT TO A NON-JURY TRIAL IN THE FEDERAL OR STATE COURT THAT HAS JURISDICTION OVER THE MATTER.

(Agreement, III.C.)

While an arbitration itself is a waiver of a jury trial, it is so within a very specific context. The provision above, however, reaches beyond that, because it limits Plaintiff's rights to a jury trial even if the Agreement is unenforceable. This is a prototypically unconscionable pre-dispute jury trial waiver. Grafton Partners v. Superior Court, 36 Cal.4th 944, 961 (2005). Based on the nature of the procedural and substantive unconscionability, the delegation clause is unenforceable. Therefore, the matter of arbitrability will be decided by the Court.

### 2. Other Clauses at Issue

Plaintiff challenges the provisions listed below as substantively unconscionable and therefore unenforceable. Armendariz is the leading California case governing the substantive unconscionability of arbitration agreements. Armendariz lays out five factors to be considered in determining whether an arbitration agreement is enforceable in the employment context. The agreement must: 1) provide for a neutral arbitrator; 2) provide for more than minimal discovery; 3) require the arbitrator to issue a written decision; 4) provide for the same remedies that would otherwise be available to the employee in court; and 5) not require the employee to bear costs unique to arbitration. Armendariz, 24 Cal.4th at 102.

#### i. Right to Jury Trial

The Agreement includes the following provision, in all capital letters: "If this agreement is determined to be unenforceable, any claims between you and the company related to your employment shall be subject to a non-jury trial in the federal or state court that has jurisdiction over the matter." ("Agreement," Dkt. No. 17-3, Ex. A.) TA Operating LLC does not appear to defend this provision. It asserts only that that it is "easily severable" and that Plaintiff does not

provide authority for the proposition that it is unconscionable. (Reply at 16.) As noted above, pre-dispute jury trial waivers of this type are prohibited, and Plaintiff provides authority which states as much. Thus, the Court finds this substantively unconscionable.

### ii.  Limitation of Remedies

Plaintiff argues that the Agreement purports to limit the employee's remedies in that it provides that each party shall "bear its own costs and fees associated with the arbitration, including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests." (Motion at 13) (quoting Agreement at II.B.iv.) The provision, titled "Payment of the Arbitration Firm's Fees and the Arbitrator's Fee and Expenses," provides in full:

> The Company will pay 100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses. The Company will also pay (or reimburse you) for 100% of any filing fees that the Arbitration Firm may charge to initiate arbitration. Each party shall otherwise bear its own costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests.

Agreement at II.B.iv.

As Plaintiff notes, the Agreement later clarifies in a different provision titled "Rules of Arbitration" that the "arbitrator may award reasonable attorneys' fees and expenses only if expressly required by an applicable statute or law." (Agreement at II.B.vi.) Although the later clarification could be interpreted as vitiating the earlier provision, the Court agrees with Plaintiff that the earlier provision implies the imposition of large fees that seeks to either (1) deter an employee from retaining legal representation, (2) deter an employee from seeking simple discovery requests, or (3) deter an employee from initiating arbitration at all. See Armendariz, 24 Cal. 4th at 1110 ("The payment of large, fixed, forum costs, especially in the face of meager awards, serves as a significant deterrent . . .") Thus, the Court finds that this provision weighs in favor of finding substantive unconscionability.

### iii.  Discovery

The Agreement provides the following as to discovery:

> It will not be necessary to conduct pre-hearing discovery, but either you or the Company may do so. If either party elects to conduct pre-hearing discovery, each party shall be allowed only up to five (5) interrogatories, including sub-parts, five (5) requests for production, including sub-parts, and two (2) depositions. Electronic discovery will be limited to searches of e-mail accounts of no more than two

> (2) addresses for a twelve month period (or any shorter period for which e-mails are retained in the ordinary course) and a maximum of five (5) search terms or phrases will be permissible.

Agreement, at II.B.iv.

Defendant argues that "limitations on arbitral discovery no longer support a finding of substantive unconscionability." (Motion at 24) (citing Chandler v. TA Operating LLC, 2022 WL 597581, *5 (E.D. Cal. Feb. 28, 2022)). The Chandler court relied on Dotson v. Amgen, 181 Cal. App.4th 975 (2010), but did not provide a pin cite in its decision. (Id.) The Court finds that Dotson does not stand for so broad a proposition in light of the Agreement here and in consideration of the National Arbitration Mediation, Inc. ("NAM") rules.[5] The Chandler Court noted that the NAM rules state that "the Parties shall provide each other with copies of all documents (except for privileged documents that are protected from disclosure . . .) upon which they rely in support of their claims or defenses." However, the Agreement does not provide that, in the event of competing interpretations, the NAM rules control. (See Agreement.) The Agreement is much narrower than the NAM rules, and the Court assumes that the Agreement controls, as the NAM rules are incorporated by reference in the Agreement; thus, the Agreement supersedes the NAM rules, unless specified otherwise. In light of this contractual interpretation, the Court finds that Dotson would not support Defendant's proposition. The Dotson court found that the limitation on discovery to one person was not unconscionable because the agreement provided for the "arbitrator's power to grant further discovery." 181 Cal.App.4th 975, 984 (2010). Here, there is no such carve out to the discovery limitation. Thus, discovery is narrowly limited with no discretion afforded to the arbitrator, which weighs towards a finding of substantive unconscionability.

## C. Whether to Sever the Unconscionable Provisions

California Civil Code section 1670.5(a) provides that:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a).

In Armendariz, the California Supreme Court interpreted section 1650.5:

---

[5] NAM is the designated arbitrator under the Agreement, although Defendant reserves the right to change arbitrators, with advance notice (though the time period is notably unspecified) to employees. (See Agreement.)

> Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.

24 Cal.4th at 124.

The Ninth Circuit has recently repeated the California Supreme Court's recognition that "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." Lim v. TForce Logistics, LLC, 8 F.4th 992, 1006 (9th Cir. 2021) (citing Armendariz, 24 Cal.4th at 124.) Thus, "an arbitration agreement permeated with unconscionability, or one that contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced." Lim, at 1006 (citing Armendariz, at 126.) However, "severance is not permitted if the court would be required to augment the contract with additional terms because [section] 1670.5 does not authorize reformation by augmentation . . ." (Id.) (citation omitted).

The Court acknowledges that Defendant requests that the Court sever the unconscionable provisions and enforce the remaining Agreement. However, the Lim court cautions that "an unconscionable arbitration term should also not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." (Lim, 8 F.4th at 1006-07). The Lim court also found that the district court did not abuse its discretion in not severing unconscionable terms "given the pervasive unconscionability of the delegation clause based on multiple unconscionable provisions—cost-splitting, fee-shifting, and Texas venue provisions . . ." (Id. at 1007.) As the Court explained above, the Agreement contains multiple unconscionable provisions that are indicative of bad faith in drafting. Further, the Court is not persuaded that it could enforce the remaining Agreement without augmentation to make it lawful. Thus, the Court declines to sever the unconscionable provisions and declines to enforce the Agreement due to pervasive unconscionability.

## IV.  CONCLUSION

The Court DENIES Defendant's Motion. The September 19, 2022 hearing is VACATED.

**IT IS SO ORDERED.**